IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 14-00346-01-CR-W-DGK |
| JOHN F. BOWEN, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION
TO RECONSIDER MOTION FOR LEAVE TO MARRY IN CUSTODY**

Before the court is defendant's motion to reconsider a previous order denying his motion to marry a government witness while in custody and prior to the resolution of the charges against him. For the following reasons, defendant's motion to reconsider is denied.

**I.   BACKGROUND**

On December 11, 2014, a criminal complaint was filed charging defendant with one count of possession with intent to distribute methamphetamine (doc. 1). After a detention hearing on December 17, 2014, defendant was ordered detained without bond pending trial (doc. 10, 11). That same day an indictment was returned charging the same possession with intent to distribute count. The case was set for trial on the June 8, 2015, criminal trial docket (doc. 17).

On March 3, 2015, defendant filed a motion for leave to marry Marcy Sorrell while in custody (doc. 20). On March 6, 2015, the government filed suggestions in opposition, stating that Marcy Sorrell provided the information that enabled law enforcement to locate defendant to execute an arrest warrant, and during that arrest

defendant was found in possession of the methamphetamine which forms the basis for the instant federal indictment (doc. 21). Therefore, Marcy Sorrell is a potential government witness and her testimony may be lost to the government if she marries defendant prior to the trial. On March 9, 2015, I entered an order denying defendant's motion to marry while in custody, finding that "the government's interest in delaying the marriage of defendant and Marcy Sorrell [until after the trial] is reasonably related to legitimate government interests and outweighs the defendant's right to marry while in custody," citing Turner v. Safley, 482 U.S. 78 (1987), and Pargo v. Elliott, 49 F.3d 1355, 1356 (8th Cir. 1995) (doc. 22).

That same day, defendant filed a motion to reconsider (doc. 23):

> Inmates like Mr. Bowen have a constitutionally protected right to marry even while incarcerated in a criminal case. Turner v. Safley, 482 U.S. 78, 95-96 (1987). In Turner, the Court struck down as unconstitutional a Missouri Department of Corrections regulation prohibiting prisoners from getting married unless the prison superintendent approved the marriage. Turner, 482 U.S. at 96. While acknowledging that "[t]he right to marry, like many other rights, is subject to substantial restrictions as a result of incarceration," Id. at 95, "Turner holds that a prisoner's right to marry may [only] be restricted where the restriction is reasonably related to a legitimate penological interest." Toms v. Taft, 338 F. 3d 519, 525 (6th Cir. 2003). Applying that test, the Court in Turner rejected the DOC's security and rehabilitation justifications as insufficient to justify the denial of the fundamental right to marry. In light of Turner, lower courts have consistently held that inmate marriage requests may be denied only when the denial would advance "legitimate penological interests." See Toms, 388 F.3d at 525; United States v. Norris, 2007 WL 4335459 (N.D. Ind. 2007) (unpublished); United States v. Bailey, 2010 WL 711819 (E.D. Tenn. 2010) (unpublished). Id. at 96-99.
>
> Here, the prosecution appears to object to defendant's marriage because it may trigger marital testimonial privileges and may thus affect Ms. Sorrell's capacity to testify as a witness for the prosecution. But such concerns are not sufficient to deny a pretrial detainee's request to marry. First, as the district court in Norris observed, the government could not interfere with a criminal defendant's decision to marry while out on bond, and the government has no greater right to object to the marriage of a pretrial detainee than it would have to

2

object to a pretrial releasee's marriage. 2007 WL 4335459. In United States v. Bailey, moreover, the Magistrate Judge rejected the government's objection to a pretrial detainee's motion to marry a potential witness because "the Government's concerns about spousal privilege are not legally sufficient to restrict Defendant's right to marry." 2010 WL 711819.

If Mr. Bowen were free on bond and not a pretrial detainee, the government would be powerless to prevent his marriage to Marcy Sorrell. Further, it is irrelevant whether or not the marriage might raise spousal privilege issues for the prosecution because such concerns do not implicate any valid penological interests that the court could consider when ruling on an inmate's motion to marry.

On March 30, 2015, the government filed a supplemental response, arguing that Safley is distinguishable because it resulted in an almost-complete ban on an inmate's power to marry (doc. 30). The government further argues that:

"The Warden shall approve an inmate's request to marry except where a legal restriction to the marriage exists." 28 C.F.R. § 511.10. An order from the Court prohibiting the marriage until the completion of this action will be a legal restriction to the marriage. The warden's decisions will thus not be judged under Safley's penological interests test but rather will be based on the legal obligation to follow the guidance of the court. Safley's framework should apply only where the prison itself has a regulation or policy that works to completely deny the inmate's right to marry.

Bowen tries to portray this decision as one that must be made to under Safley's framework evaluating penological reasons for denying a marriage, and Bowen presented the unpublished case of United States v. Bailey as an example of what should be done in a situation where the court imposed the penological interest test on the Government when they were asking for the delay of a marriage. 2010 WL 711819. While that case is seemingly analogous to this case, there are other cases that illustrate differing resolutions to the present case and show that the Government does not have to justify its request to delay a marriage with penological reasons. Vance v. Rice is an example of the same set of facts, but an outcome in the Government's favor. In Rice, which was not overruled by Safley, the state not the facility was bringing an action to prohibit an inmate to marry, and the court engaged in a balancing test to determine whether there was a compelling interest at stake. 524 F. Supp. 1297 (S.D. Iowa 1981). In that case, the state was asking to delay a marriage of a material witness to a defendant, the court held that preserving the witness' ability to testify was a compelling interest as required by strict scrutiny, that the delay of the defendant's marriage to the witness furthered the compelling witness and that the delay of

3

the marriage was the least intrusive manner to further that interest thus rendering their actions constitutional. Id. As in Vance, the Government has a compelling interest in preserving the witness' ability to testify, and a delay of the marriage will be the least intrusive manner in which to preserve that ability, and this is a decision that the court can constitutionally make under Safley, since it better applies to situations where prisons create de facto regulations.

At issue in this case is the possibility of providing a spousal privilege which would preclude the following testimony. Marcy Sorrell was arrested on a felony warrant. She began cooperating with law enforcement officers who were attempting to locate defendant so they could execute an arrest warrant for failure to appear on a charge of aggravated assault on a law enforcement officer. No evidence has been presented to the court that law enforcement was investigating defendant for methamphetamine trafficking at the time. Marcy Sorrell told police where defendant had an auto repair shop. She described his car. She provided a cell phone number for him. She told police that defendant has two dogs and almost never goes anywhere without them. She told police that she had been living with defendant and gave them the address.

Based on this information police obtained a GPS tracking device for defendant's car and a GPS tracking device and cell phone records for defendant's phone. Through surveillance of the auto repair shop and the residence, and monitoring of these GPS devices, police were able to locate defendant at his residence the day of his arrest. When police arrived to execute the arrest warrant, a woman was present in defendant's house attempting to buy methamphetamine from him. When defendant was arrested, he was in possession of the methamphetamine that resulted in this federal indictment. A search warrant was obtained and the methamphetamine was seized from the house (doc. 36, 37).

4

## II.     MOTION TO MARRY WHILE IN CUSTODY

A prison inmate retains those constitutional rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.  Turner v. Safley, 482 U.S. 78, 95 (1987); Pell v. Procunier, 417 U.S. 817, 822 (1974).  Marriage is constitutionally protected in the prison context.  Turner v. Safley, 482 U.S. at 96.  Pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that are enjoyed by convicted prisoners.  Bell v. Wolfish, 441 U.S. 520, 545 (1979).  "But . . . simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations."  Id. (citing Price v. Johnston, 334 U.S. 266, 285 (1948)).  See also Roe v. Crawford, 514 F.3d 789, 794 n.2 (8th Cir.) (the right to marry is subject to substantial restrictions as a result of incarceration), cert. denied, 555 U.S. 821 (2008).

I begin by noting that there are no cases on point in the Western District of Missouri or in the Eighth Circuit.  Interestingly, defendant cites cases with a nearly identical factual scenario and hold that a motion to marry a potential government witness should be granted, while the government also presents a case with nearly the same factual scenario, but holding that such a motion should be denied.  Defendant's authority utilizes the rational relationship test while the government's authority utilizes the strict scrutiny test.  Because there is no binding authority on this issue, I will review both lines of decisions.

The most often-cited case dealing with a prisoner's right to marry is Turner v. Safley, 482 U.S. 78 (1978), and indeed that case is cited by both the government and

5

the defendant in support of their positions.[1] Turner v. Safley was a civil case challenging a prison regulation prohibiting marriage by inmates except in the case of preventing the birth of illegitimate children.[2] The question in Turner was whether a prison regulation was constitutional. The proffered reason for the regulation -- despite the fact that inmates had been marrying before its implementation and there was no problem when these marriages were being allowed (482 U.S. at 98-99) -- was that "love triangles" might cause violent confrontations between inmates, and "female prisoners often were subject to abuse at home or were overly dependent on male figures, and . . . this dependence or abuse was connected to the crimes they had committed. . . [T]hese women prisoners needed to concentrate on developing skills of self-reliance" and "the prohibition on marriage furthered this rehabilitative goal."[3] 482 U.S. at 97.

---

[1] "The right to marry, like many other rights, is subject to substantial restrictions as a result of incarceration." Turner v. Safley, 482 U.S. 78 (1978) - government's brief. "Turner holds that a prisoner's right to marry may [only] be restricted where the restriction is reasonably related to a legitimate penological interest." - defendant's brief.

[2] "The Missouri marriage regulation prohibits inmates from marrying unless the prison superintendent has approved the marriage after finding that there are compelling reasons for doing so. As noted previously, generally only pregnancy or birth of a child is considered a 'compelling reason' to approve a marriage." Turner v. Safley, 482 U.S. at 96-97.

[3] "[A]lthough not necessary to the disposition of this case, we note that on this record the rehabilitative objective asserted to support the regulation itself is suspect. Of the several female inmates whose marriage requests were discussed by prison officials at trial, only one was refused on the basis of fostering excessive dependency. The District Court found that the Missouri prison system operated on the basis of excessive paternalism in that the proposed marriages of *all* female inmates were scrutinized carefully even before adoption of the current regulation -- only one was approved at Renz in the period from 1979-1983 -- whereas the marriages of male inmates during the same period were routinely approved. That kind of lopsided rehabilitation concern cannot provide a justification for the broad Missouri marriage rule." Turner v. Safley, 482 U.S. at 99 (emphasis in the original).

6

The Court established a balancing test pursuant to which courts analyze prohibitions on prisoners' exercise of their constitutional rights by considering the following four factors: (1) whether prohibiting an inmate from exercising a constitutional right is rationally related to a legitimate governmental interest; (2) whether there are alternative means of exercising that right; (3) what effect accommodation of the interest would have on guards, other inmates, and the allocation of prison resources; and (4) whether there are ready alternatives available that continue to serve the prison's interest without impinging constitutional rights. Id. at 89-91; Sisneros v. Nix, 884 F. Supp. 1313, 1327 (S.D. Iowa 1995).

The government correctly points out that the issue in Turner v. Safley was the constitutionality of a prison regulation. Such is not the case here. There are, in fact, regulations in place dealing with an inmate's desire to marry while in custody; however, defendant has not challenged the constitutionality of any of them.

Title 28, Code of Federal Regulations, § 551.10 provides that the Warden shall approve an inmate's request to marry except where a legal restriction to the marriage exists, or where the proposed marriage presents a threat to the security or good order of the institution, or to the protection of the public. If a marriage ceremony poses a threat to the security or good order of the institution, the Warden may disapprove a marriage ceremony in the institution.

Section 511.11 provides that the Warden may approve the marriage of a federal inmate confined in a federal institution and may not delegate this authority below the level of Acting Warden.

7

Section 511.12 states that an inmate's request to marry shall be approved provided:

    (a)    The inmate is legally eligible to marry;

    (b)    The inmate is mentally competent;

    (c)    The intended spouse has verified, ordinarily in writing, an intention to marry the inmate; and

    (d)    The marriage poses no threat to institution security or good order, or to the protection of the public.

The government argues in its supplemental response that a court order denying a request to marry would make the inmate not "legally eligible to marry" which could then form the basis for the Warden denying a request to marry under this regulation. However, a court order must be based on the law. Providing this regulation as authority for a court to deny a pretrial detainee's request to marry on the ground that the inmate would not be legally eligible to marry if the court denied the request is nothing but a circular argument. It seems to me that this subsection, dealing with an inmate being legally eligible to marry, means that the inmate is not already married to someone else or something of that nature.

Section 551.14 deals specifically with pretrial detainees.

> (a)    Detainers and pending charges. Staff review of a marriage request from an inmate who has a detainer(s) and/or a pending charge(s) shall include an assessment of the legal effects of the marriage on these actions. For example, an inmate could request to marry a potential witness in litigation pending against that inmate. Approving this marriage could affect the status of this litigation.
>
> (b)    Pretrial inmates. A pretrial inmate may request permission to marry in accordance with the provisions of this rule. Staff shall contact the court, U.S.

8

Attorney, and in the case of an alien, the Immigration and Naturalization Service, to advise of the marriage request of the pretrial inmate and to request their comments.

With this legal background in mind, I now turn to the specific cases cited by the parties. Defendant relies on United States v. Bailey, 2010 WL 711819 (E.D. Tenn., February 23, 2010), and United States v. Norris, 2007 WL 4335459 (N.D. Ind., December 7, 2007).

In Bailey, the defendant filed a motion to marry while in custody awaiting trial. The government opposed the motion on the ground that the marriage would raise potential evidentiary issues of spousal privilege, but the government had no objection to the marriage after the charges were resolved. The court overruled the government's objection and permitted the marriage.

> Although a prisoner's freedom to marry is constitutionally protected, an institution where a prisoner is incarcerated may in some circumstances deny the prisoner's request to marry. See Turner v. Safley, 482 U.S. 78, 89 (1987). A penal institution's refusal to grant a prisoner permission to marry must be "'reasonably related to legitimate penological interests.'" Toms v. Taft, 338 F.3d 519, 525 (6th Cir. 2003) (quoting Turner, 482 U.S. at 89). On the other hand, the Government has cited no authority, and the Court is aware of none, supporting the proposition that the prosecution (as opposed to the penal institution) can prevent a detainee from marrying before his trial. Thus, if Defendant had not been detained pending trial, the prosecution would be powerless to prevent his marriage. Put simply, the only reason the Government finds itself in a position to object to Defendant's marriage is Defendant's confinement, and the reasons for denying his permission to marry must therefore be related to the purposes of his confinement.
>
> It appears the institution where Defendant is housed has not denied Defendant's request outright, but merely requires Defendant to seek the Court's leave to marry. The Court, of course, cannot authorize a greater restriction of Defendant's constitutional freedoms than would otherwise be permitted, and the Court may therefore deny Defendant's motion only if the Government's objection is grounded in legitimate penological interests. The Government has not asserted any reason to delay the marriage that is related to the purposes for which Defendant has been confined nor has the Government shown that its

9

prosecutorial concerns about evidentiary privileges are penological interests. Thus, the Court is not aware of any legal reason for prohibiting the marriage.

Before turning the United States v. Norris, I make the following observations with regard to the analysis in Bailey. First, the standard set out in Turner v. Safley as cited by the Bailey court is the specific standard of review when the court is faced with the question of whether a prison regulation is constitutional. The "penological" interest discussed in Turner was the "legitimate and non-punitive governmental goal" presented by the Department of Corrections in support of that prison regulation. However, not every "legitimate and non-punitive governmental interest" will be a "penological" interest.

In Bell v. Wolfish, 441 U.S. 520, 535 (1979), the Supreme Court held that:

In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

Pretrial detainees derive their rights from the due process clause while convicted prisoners get theirs from the cruel and unusual punishment provision of the Eighth Amendment. Id., at 545.

Therefore, the government is not required to show a penological goal merely to support its objection to a pretrial detainee marrying prior to resolution of his charges. Although the factual scenario in Bailey is nearly identical to the one here, I do not agree with the legal analysis, nor do I agree with the comparison that because the government could not preclude a pretrial detainee from marrying if he were on bond the

government should not be able to preclude a pretrial detainee from marrying while he is in custody.

> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. Traditionally, this has meant confinement in a facility which, no matter how modern or how antiquated, results in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial. . . . Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. . . .
>
> This Court has recognized a distinction between punitive measures that may not constitutionally be imposed prior to a determination of guilt and regulatory restraints that may. In Kennedy v. Mendoza-Martinez, the Court examined the automatic forfeiture-of-citizenship provisions of the immigration laws to determine whether that sanction amounted to punishment or a mere regulatory restraint. While it is all but impossible to compress the distinction into a sentence or a paragraph, the Court there described the tests traditionally applied to determine whether a governmental act is punitive in nature:
>
>> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment-retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions.

Bell v. Wolfish, 441 U.S. at 537-538 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-169 (1963)) (internal citations and footnotes omitted).

Based on the above, I believe that the standard for determining whether the court should appropriately deny a pretrial detainee's request to marry a government witness prior to resolution of the charges, such as that request faced by the court in Bailey and the issue before me today, should be analyzed by looking to whether the

11

government has advanced a "legitimate and non-punitive governmental interest" which is rationally related to prohibiting a pretrial detainee from exercising a constitutional right which is based on the due process clause. Because of this, and because Bailey limited the government interest to nothing more than a penological interest, I decline to follow the holding of United States v. Bailey.

The second case relied on by defendant is United States v. Norris, 2007 WL 4335459 (N.D. Ind., December 7, 2007). In that case Norris filed a motion to marry while in custody awaiting trial. The government opposed the motion on the ground that the marriage would raise potential evidentiary issues of spousal privilege, but the government had no objection to the marriage after the charges were resolved. The court overruled the government's objection and permitted the marriage.

> To assess the constitutionality of the conditions or restrictions of pretrial detention, a court must determine whether the conditions amount to punishment. Conditions of confinement which are reasonably related to legitimate and non-punitive government goals, are not unconstitutional. A court must be particularly deferential to policies and practices aimed at maintaining the safety and security of jails and penitentiaries.
>
> Marriage is of course an important fundamental right. . . . That right is enjoyed by both pretrial detainees and convicted inmates. Turner v. Safley, 482 U.S. 78, 96 (1987) (concluding that there is "a constitutionally protected marital relationship in the prison context"). In Turner v. Safley, the Supreme Court examined a regulation which prohibited inmates from marrying other inmates or civilians unless the prison superintendent determined that there were compelling reasons for the marriage. The Turner Court established the standard for determining the constitutionality of such regulations. "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."

United States v. Norris, 2007 WL 4335459 (internal citations and quotations omitted).

Although the Norris court stated that "conditions of confinement which are reasonably related to legitimate and non-punitive government goals are not

12

unconstitutional," the court then jumped to the conclusion that a request to get married must be analyzed using the penological interests standard, i.e., the only governmental interest that is weighed against a pretrial detainee's constitutional right to marry is the interest in security at the holding facility and safety of inmates and prison staff. It is unclear why the court proceeded as though a "penological interest" is synonymous with "a legitimate and non-punitive government goal." Therefore, as in the case of United States v. Bailey, I decline to follow the holding of the Norris decision.

A published decision not in this district but at least contained within this circuit is Vance v. Rice, 524 F. Supp. 1297 (S.D. Iowa 1981). Phillip Vance was arrested for robbery of a drug store during which three people were bound and shot at close range, although none died. Monica Halsey was taken into custody as a material witness. Ms. Halsey had been living with Vance for two years and was pregnant with his child. Vance announced that he wanted to marry Ms. Halsey. Her deposition was taken to preserve her testimony and she was released on bond. Vance and Halsey obtained a legal marriage license, and Vance requested that the jailer allow them to be married before the marriage license expired. The request was denied. Vance then filed an action in federal district court under 42 U.S.C. § 1983.

In its analysis, the court found that the government and the public have an important interest in the apprehension, prosecution and punishment of the perpetrator of the crime with which Vance was charged.

> A lawsuit is a search for the truth. It is an elusive goal, at best, but evidence which aids the fact finder in reaching that goal should ordinarily be admitted. It could very well be that a criminal defendant, by marrying a key witness and thereby foreclosing the use of her testimony, could so weaken the case against him, that he, even if guilty, would be able to escape punishment

13

and thwart justice. Seeing justice done is the ultimate goal of the judicial process. The Court is of the opinion that the state's interest in having all relevant evidence before the fact finder commands great respect and deference as a part of the foundation of our criminal justice system.[4] A fact finder deprived of relevant facts may reach a conclusion compelled by logic, yet not by justice. If our judicial system regularly meted out injustice, it would not long be tolerated.

> The whole life of the community, the regularity and continuity of its relations, depends upon the coming of the witness. Whether the achievements of the past shall be preserved, the energy of the present kept alive and the ambitions of the future be realized depends upon whether the daily business of regulating rights and redressing wrongs shall continue without a moment's abatement, or shall suffer a fatal cessation. The business of the particular cause is petty and personal, but the results that hang upon it are universal. All society, potentially, is involved in each individual case. The vital process of justice must continue unceasingly. A single cessation typifies the prostration of society. A series would involve its dissolution. The pettiness and personality of the individual trial disappear when we reflect that our duty to bear testimony runs not to the parties in that present cause, but to the community at large and forever.

8 J. Wigmore, Evidence s 2912, at 72-73 (McNaughton rev. 1961).

However, the legislative branch has from time to time carved out a few, but highly significant, exceptions to the general rule that the fact finder should have all relevant evidence before it. Exceptions, such as the physician-patient, priest-penitent, and attorney-client privileges, represent a considered legislative judgment that the public interest in having all relevant evidence presented to the fact finder is subordinate to some other important public interest. See Elkins v. United States, 364 U.S. 206, 234-35 (1960) (Frankfurter, J., dissenting.)

Although its sweep is much broader than the privileges just mentioned, Trammel v. United States, 445 U.S. 40, 51-52 (1980), Iowa Code section 622.7, the spousal competency statute, represents such a judgment. As was the case

---

[4]Indeed the Supreme Court has made note of the preference for including all relevant and reliable evidence in a court proceeding. See Davis v. United States, 131 S. Ct. 2419, 2427 (2011) (recognizing the "substantial social costs" of withholding relevant and reliable evidence); Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 363 (1998); United States v. Leon, 468 U.S. 897, 979 (1984) (dissenting opinion); Illinois v. Gates, 462 U.S. 213, 257-258 (1983); United States v. Ceccolini, 435 U.S. 268, 280 (1978) (concurring opinion); Stone v. Powell, 428 U.S. 465, 496 (1976) (concurring opinion).

14

in many other states, see 445 U.S. at 43-46, the Iowa legislature adopted a statutory provision rendering one spouse incompetent to testify against the other, with some exceptions. The ostensible goal of these spousal competency statutes was to preserve some semblance of marital harmony for civil and criminal litigants. Down through the years, many states apparently revised their judgments as to the relative importance of the interests promoted and thwarted by spousal competency statutes. The result has been a trend toward abolishing or severely limiting such statutes.[5] 445 U.S. at 48-50. Iowa, however, is one of eight states which still forbid one spouse to testify against the other, with some exceptions not relevant here. Id. at 48, n.9.

The Court is of the opinion that, while the legislative policy choice embodied in Iowa Code section 622.7 is relevant in assessing the weight to be accorded the state interest asserted by defendants in the above-captioned action, that policy choice is by no means determinative. Although the legislature probably recognized that the price of preserving litigants' marital harmony would be the loss of some relevant testimony, see generally 8 J. Wigmore, Evidence s 2912 (McNaughton rev. 1961), the Court is of the opinion that it would be unreasonable to infer a legislative intent to prohibit state officials from preventing an accused from marrying a prosecution witness in the time between the filing of criminal charges and the trial, when such a marriage would allow the accused to reap the exclusionary benefits of section 622.7.

The circumstances would be entirely different if the parties were already married. The public policy concerned with the preservation of marital harmony would then be superior to the public's "right to every man's evidence," 364 U.S. 206, 234 (Frankfurter, J., dissenting), under the policy judgment embodied in section 622.7. However, because Vance and Halsey are not married, the state's interest in having its courts do justice prevails over any competing policy considerations related to the right to marry.

Marriage, of course, should be encouraged. The Court is not unmindful that the testimony of Ms. Halsey at Vance's trial may well have a negative effect upon their future relationship. Nor has the Court ignored the complications presented by the impending birth of their child and the fact that the parties have lived together for two years. However, these considerations do not implicate the same legislative concerns for marital harmony as would an existing marriage.

The Court's understanding of the legislative intent underlying section 622.7 convinces it that the state's interest in having all relevant evidence presented to the fact finder is not subordinate to any other public policy, in the circumstances presented by the above-captioned action. Accordingly, the Court

---

[5]Indeed Iowa Code Section 622.7 was repealed in 1983.

> is of the opinion that the state interest asserted by defendants satisfies the "compelling state interest" requirement of the traditional "strict scrutiny" approach.

Vance v. Rice, 524 F. Supp. at 1300-1301.

The court in Vance v. Rice used the strict scrutiny test, prior to the Supreme Court's announcement in Turner v. Safley that the proper test is the rational relationship test. However, because the government's interest in presenting all relevant and reliable evidence to a jury outweighed the defendant's constitutional right to marry while in custody (at least until the charges were resolved) even using the strict scrutiny test, that governmental interest clearly would outweigh the right to marry using the less stringent rational relationship test.

The Supreme Court in Turner v. Safley stated that, "it is undisputed that Missouri prison officials may regulate the time and circumstances under which the marriage ceremony itself takes place." 482 U.S. at 99. Title 28, Section 551.14 of the Code of Federal Regulations provides that a holding facility must contact the United States Attorney to request comments on a pretrial detainee's request to marry. If the only thing that could trump a pretrial detainee's desire to marry a government witness while in custody was a penological interest, that comment by the Supreme Court in Turner v. Safley and that regulation would have virtually no meaning. As discussed above, the government is required to show only a legitimate and non-punitive governmental goal, not a penological interest, since the constitutionality of a prison regulation is not being challenged here.

Utilizing the balancing test discussed by the Supreme Court in Turner v. Safley, I find that the cost to society by permitting a pretrial detainee to marry a government

16

witness and thereby foreclose the use of her testimony, weakening the case against him so that even if guilty he may be able to escape punishment and thwart justice, outweighs the defendant's constitutional right to marry while in custody at least until the charges against him are resolved.  I note here that defendant's case is set on the June 8, 2015, criminal trial docket. Therefore, by denying this motion to marry while in custody at this time, the court is depriving defendant of participating in the institution of marriage for a total of less than two months.

      Based on all of the above, it is

      ORDERED that defendant's motion to reconsider the order denying his motion to marry Marcy Sorrell while in custody and prior to resolution of the charge against him is denied.

                                     /s/ Robert E. Larsen
                                       ROBERT E. LARSEN
                                       United States Magistrate Judge

Kansas City, Missouri
April 24, 2015